IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWIN S.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 24 C 3249 |
| v. ) | |
| ) | Magistrate Judge |
| FRANK BISIGNANO, ) | Daniel P. McLaughlin |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [17] is denied, and the Commissioner's cross-motion for summary judgment [26] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Frank Bisignano has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On August 13, 2021, Plaintiff filed a claim for supplemental security income, alleging disability since July 22, 2021. [17], p. 1.

The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 21, 2023, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On September 22, 2023, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since August 13, 2021, the application date. [12-1], p. 22.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: status post traumatic amputation of the left great toe and degenerative disc disease of the cervical and lumbar spine. *Id*.

The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments. *Id*. at 25.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: limited to occasional climbing, balancing, kneeling, and crouching; limited to no crawling; limited to no operation of left foot controls/pedals. *Id*. at 28.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a material handler and stores laborer. *Id*. at 32.

However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## **DISCUSSION**

### **I.     ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is

disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the

absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if

5

"'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error because it relied on unreliable VE testimony, conducted an improper subjective symptom assessment, and ignored evidence about his toe amputation. Each argument will be addressed in turn.

### A. VE Testimony

Plaintiff argues that the VE gave unreliable testimony at the hearing, and that the ALJ erred in relying on that testimony in her decision. [17], p. 5. Plaintiff argues that a VE is required to provide job estimates "[b]ased on a methodology which is generally accepted" and that the VE "[m]ust cogently and thoroughly explain their methodology." *Id*. at 4. Plaintiff further argues that the VE in this case failed to fulfill either "requirement" because she did not state that her "[m]ethodology is used by anyone else or is approved as a reliable method from an authoritative source" and because she could not explain the precise methodology used by the Skill-TRAN software that she relied on to generate job number estimates. *Id*. at 5.

The Seventh Circuit has provided substantial guidance as to the requirements for an ALJ's reliance on VE testimony, explaining that

> [w]hen an ALJ bases a decision on the testimony of a vocational expert, the substantial evidence standard requires the ALJ to ensure that the vocational expert's job number estimate is the product of a reliable method. A precise count is not necessary, but the vocational expert's testimony must be supported with evidence sufficient to provide some modicum of confidence in its reliability. All the substantial evidence

6

> standard requires is that a vocational expert gave enough detail for the Court to understand the sources of his data and the general process he adopted.

*Chavez v. O'Malley*, 96 F.4th 1016, 1022 (7th Cir. 2024) (internal quotations and citations omitted). The Supreme Court has further elaborated on the degree of explanation required by the VE, asserting that the inquiry as to the substantiality of the evidence in such instances is "case-by-case" and "[d]efers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1156–57, 203 L. Ed. 2d 504 (2019). Ultimately, "[e]ven without significant testing, a factfinder may conclude that testimony has sufficient indicia of reliability to support a conclusion about whether an applicant could find work." *Biestek*, 139 S. Ct. at 1156–57.

With this deferential framework in mind, the Court finds that the VE testimony and methodology in this case was reliable. The VE testified that she used the Skill-TRAN technology to generate the number of full-time jobs in the national economy for specific DOT codes. [12-1], p. 84-85. While the VE was unable to recite by memory the methodology used by the Skill-TRAN technology to generate job numbers, caselaw does not require that she be able to do so in order to render her testimony reliable. *See Case v. Kijakazi*, No. 22-2379, 2023 WL 4882880, at *3 (7th Cir. Aug. 1, 2023) ("The inability of the vocational expert to precisely explain the software's algorithms does not render his explanation unreliable."). Upon questioning, the VE affirmed that she had reviewed Skill-TRAN's methodology before, that the methodology was available to the public on the Skill-TRAN website,

7

and that she uses only the full-time job numbers generated by Skill-TRAN. [12-1], p. 84-85. Such details are more than sufficient for the Court to "[u]nderstand the sources of [the VE's] data and the general process [the VE] adopted." *Chavez*, 96 F.4th at 1022.

Moreover, as in *Chavez*, the jobs the VE identified—cafeteria attendant (16,000 jobs), office helper (7,000 jobs), and mail clerk (13,000 jobs)—are facially "[p]revalent in the national economy." *Chavez*, 96 F.4th at 1023. "[T]he vocational expert must show that the jobs exist in significant numbers. This is satisfied by the common nature of the jobs and supports the ALJ's reasonable reliance on her testimony." *Id*.

Ultimately, even if the "common nature" of the VE's suggested jobs were not apparent, the Court would still find no issue with the ALJ's ultimate conclusion that there exist a significant number of jobs for Plaintiff. The Court agrees with the ALJ that the RFC's additional limitations to the light occupation base are so minimal that the "erosion [of the light occupational base] would not limit the [Plaintiff] to only those jobs cited by the vocational expert," meaning that "[it] is also reasonable to conclude that there are other light occupations with thousands more jobs besides the ones cited that would match the residual functional capacity." [12-1], p. 34. Therefore, even if the Court had found the VE's testimony to be unreliable, any error that would result would be harmless given the significant light occupation base that withstands the RFC's minimal erosion.

8

### B. Subjective Symptom Assessment

Plaintiff argues that the ALJ erred in evaluating the intensity, persistence, and limiting effects of his symptoms, taking particular issue with the ALJ's evaluation of Plaintiff's activities of daily living (ADLs), physical therapy evidence, and Plaintiff's wife's third-party function report. [17], p. 11-16.

Under SSR 16-3P, in evaluating the intensity, persistence, and limiting effects of a Plaintiff's symptoms, an ALJ is instructed to consider various factors, including a Plaintiff's daily activities and medication use, an evaluation often described as the "subjective symptom assessment." SSR 16-3P (Mar. 28, 2016); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). An ALJ's credibility finding is given "special deference" and will be overturned only if it is "patently wrong," meaning that it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)) (internal quotations omitted); *Elder*, 529 F.3d at 414. The ALJ's credibility determination here was explained and supported, and thus was not patently wrong.

The ALJ explained that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the record. [12-1]. p. 31. The ALJ supported this explanation with analysis of the Plaintiff's medical records, which the Court notes are quite limited. *Id.* Specifically, the ALJ pointed out that while Plaintiff testified at the hearing that he uses a cane, there is no "[d]ocumentation of any need for a cane or any prescription for a cane in the medical records." *Id.*; *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019) (finding no error

9

in the ALJ's RFC assessment where Plaintiff can provide no medical confirmation of self-reported symptoms).

Moreover, the ALJ noted that while medical records document "weakness in all planes," no degree of weakness is specified. [12-1], p. 31. Similarly, the ALJ observed that other than physical therapy (from which Plaintiff was discharged for non-attendance), no treatment for Plaintiff's back, neck, or upper extremity issues is documented. *Id*. An "ALJ [is] entitled to draw inferences from evidence of conservative treatments and inconsistencies between Plaintiff's description of his symptoms and the overall record and treatment." *Michael A. v. Kijakazi*, No. 20-CV-4585, 2023 WL 6311535, at *8 (N.D. Ill. Sept. 28, 2023); *see also*, SSR 16-3PP, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). The ALJ here did just that, inferring from Plaintiff's consistently conservative treatment an inconsistency with his symptom characterization.

As to the ALJ's consideration of Plaintiff's activities of daily living, the ALJ did consider Plaintiff's described daily activities, such as his childcare and housework activities. [12-1], p. 31. The ALJ found that while Plaintiff's "[d]escribed activities are not conclusive proof the [Plaintiff] can perform full-time work," the described activities "[a]re not limited to the extent one would expect…given the complaints of

10

disabling symptoms and limitations." *Id*. As the ALJ did consider Plaintiff's activities of daily living and found them inconsistent with Plaintiff's asserted symptoms, Plaintiff's challenge to this consideration is effectively a request for this Court to reweigh the evidence of his daily living activities such that it cuts in favor of Plaintiff's allegations of disability. But the Court is not allowed to "[r]eweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53. And substantial evidence does support the ALJ's determination; as discussed previously, Plaintiff's limited medical records show conservative treatment that is inconsistent with Plaintiff's claimed symptoms. The addition of Plaintiff's daily living activities, which demonstrate that Plaintiff participates in housework and childcare, is simply another factor the ALJ weighed in determining that Plaintiff's symptomology is not consistent with the evidence of record. The Court will not reweigh the daily living activities evidence.

Similarly, Plaintiff takes issue with the ALJ's characterization of his physical therapy evidence and its import in his subjective symptom assessment, arguing that it supports his allegations of disabling symptomology and that the ALJ ignored pieces of physical therapy evidence. [17], p. 13-14. As "[a]n ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence," the Court need not consider further Plaintiff's complaints of missed evidence; the ALJ did discuss physical therapy evidence, and she was not required to discuss every single piece of such evidence. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). As

11

to Plaintiff's complaints about the import of the physical therapy evidence overall, Plaintiff again essentially requests that the Court reweigh the evidence. For example, Plaintiff argues that while physical therapy did admittedly improve his "ambulation endurance," it only increased from 403 feet to 1,103 feet. [17], p. 13. In pointing this out, Plaintiff asks the Court to reweigh this evidence and find that it cuts more towards disability than improvement. As discussed previously, the Court is not allowed to reweigh the evidence and declines to do so here. The Court therefore finds no issue with the ALJ's consideration of the physical therapy evidence.

Finally, as to the ALJ's evaluation of Plaintiff's wife's third-party function report, the Court notes that "[t]he ALJ was not required to articulate how evidence from nonmedical sources was considered using the requirements in 20 C.F.R. § 404.1520c(a)-(c)." *Martin P. v. Kijakazi*, 22C3038, 2023 WL 3258526, at *5 (N.D. Ill. May 4, 2023) (internal citations omitted). The ALJ stated that the third-party function report was unpersuasive because "[i]t is a lay opinion based upon causal observation, rather than objective medical examination and testing." [12-1], p. 32. The Court therefore finds no error with the ALJ's weighing of the report as it was sufficiently explained. *Jazelle A.G. v. Comm'r of Soc. Sec.*, 22C01323-JEH, 2024 WL 5330668, at *7 (C.D. Ill. Mar. 12, 2024) (finding no issue with the ALJ's weighing of a third-party function as "unpersuasive" based on lack of medical training); *Charles S. v. King*, 24C1766, 2025 WL 358953, at *7 (N.D. Ill. Jan. 31, 2025) (finding no issue with the ALJ's weighing of a third-party function report as "mostly unpersuasive"

because "[t]he ALJ was only obligated to provide a minimal articulation of how nonmedical evidence, such as third-party statements, was considered.").

Ultimately, "[a]n ALJ need only assert a single valid reason to support his [subjective symptom] assessment," and the ALJ clearly did so here by highlighting the inconsistencies between Plaintiff's conservative and limited medical treatment, and Plaintiff's claimed symptoms. *Dwayne D. v. Kijakazi*, 21C149, 2023 WL 6976897, at *3 (N.D. Ill. Oct. 23, 2023). The ALJ did not err in her subjective symptom assessment.

**C. Toe Amputation Evidence**

Plaintiff argues that the ALJ erred in failing to acknowledge certain evidence about his toe amputation, emphasizing that "Plaintiff's timeline for recovery was drastically different than had Diabetes [*sic*] not affected him." [17], p. 10-11. But "[a]n ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053.

The ALJ discussed medical evidence about Plaintiff's toe amputation and its corresponding conservative treatment. Although the ALJ did not explicitly mention the debridement procedure Plaintiff underwent in October of 2021, she did trace the overall arc of treatment through Plaintiff's records, which showed conservative treatment that essentially ended with Plaintiff failing to continue physical therapy. [12-1], p. 29-30. The ALJ therefore sufficiently considered evidence of Plaintiff's toe amputation, and her failure to explicitly discuss the 2021 debridement matters little

13

in light of the overall record of conservative and limited treatment. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (finding that "the ALJ did not ignore an entire line of evidence that supported a finding of disability and her failure to discuss [a specific piece of evidence] matters little in light of [Plaintiff's] treating physicians' consistent description of her condition as mild or benign.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [17] is denied, and the Commissioner's cross-motion for summary judgment [26] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE: July 1, 2025**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**